Argued and submitted April 23, reversed June 2,
reconsideration denied July 10,
petition for review denied September 3, 1980 (289 Or 588)

## 1000 FRIENDS OF OREGON, et al,
### *Petitioners,*
#### *v.*
## DIVISION OF STATE LANDS, et al,
### *Respondents.*

### (No. 2873, CA 16027)
#### 611 P2d 1177

Richard P. Benner, Portland, argued the cause and filed the brief for petitioners.

Al J. Laue, Assistant Attorney General, Salem, waived appearance for respondent Division of State Lands.

Terry G. DeSylvia, Portland, argued the cause for respondent Michael O. Malarkey. With him on the brief was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

**RICHARDSON, P.J.**

Petitioners appeal an order of the Division of State Lands granting Michael O. Malarkey a permit to maintain an existing dike across a tidal slough in Scappoose Bay. Petitioners contend that the permit was granted without proper consideration of the factors set out in ORS 541.625.

Malarkey owns a large parcel of property containing his residence located adjacent to Scappoose Bay. Prior to 1972, access to the residence was by wooden bridge. In 1972, without seeking a permit as required by ORS 541.615(1), Malarkey constructed an earth fill dike across the slough for a roadway. The dike contained two large culverts to allow passage of waters under the dike. Prior to construction of the dike, small boats were able to pass under or over the wooden bridge depending on the level of the water. After the fill was put in for the dike, boat passage was no longer possible.

In 1977, petitioner Mikesh filed a complaint with the Director of the Division of State Lands concerning the dike. Malarkey then filed an application for an after-the-fact permit with the Division. The Director issued a permit to allow the fill to remain with the specific condition, pursuant to ORS 541.625(4), that Malarkey excavate a 30 foot wide bridge opening in the dike to allow boat passage.

Malarkey requested a hearing to contest the condition imposed. Following the hearing, the Division removed the condition and amended the permit to allow the fill as it existed. Petitioners appeal pursuant to ORS 541.627.

The Director made the following Ultimate Finding of Fact:

"* * * * *

"2. The dike fill does not unreasonably interfere with navigation, fishing, and public recreation in and on the water areas above the dike.

"* * * * *"

[427]

Petitioners' principal argument is that this ultimate finding is not supported by any finding of fact regarding the public need for the fill. It is contended that the Director must address the public need for the fill before balancing the need for the fill against the paramount public policy expressed in ORS 541.610:

"(1) The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes, bays, estuaries and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for fish, avenues for transportation and sites for commerce and public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state for any purpose, may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of this state.

"* * * * *."

The criteria for issuance of a fill permit is set forth in ORS 541.625:

"* * * * *

"(2) The director shall issue a permit applied for under ORS 541.620 for filling waters of this state if he determines that the proposed fill would not unreasonably interfere with the paramount policy of this state to preserve the use of its waters for navigation, fishing and public recreation. In determining whether or not a permit shall be issued, the director shall consider the following:

"(a) The public need for the proposed fill and the social, economic or other public benefits likely to result from the proposed fill. * * *

"* * * * *."

[428]

The director made findings of fact regarding impediments to navigation and the effect of the dike on the fish population and recreational use of the water above the dike. He found:

"* * * * *

"6.　Boat traffic from Scappoose Bay is terminated at the dike fill.

"* * * * *

"10.　The channels above the dike are mostly dewatered during low flow periods. As the water drains from upper slough reaches, fish normally move into lower Scappoose Bay. The dike and culverts tend to interfere with fish passage in that water velocities are accelerated through the culverts. Bass and Crappie seek and inhabit still water locations and usually avoid the increased velocity water passing through the culverts.

"11.　Permittee currently allows public access to the dike fill and thence to the waters upstream of the dike. Access to the area upstream of the dike from the dike may be revoked by Permittee.

"* * * * *."

In the opinion portion of the order the Director stated that the recreational use of the water above the dike had been restricted but not unreasonably because of the minor public use that historically existed. He stated no persuasive evidence existed that there was any adverse impact on the fish population or the fishing because of the dike. He also stated that the public's right to use the area above the dike is no more limited now than prior to the dike's construction. This latter statement is not consistent with the specific finding of fact that after construction of the dike, boat traffic was terminated at the dike.

The findings of the Director indicate some effect on the recreational use of the waters above the dike and some effect on the fish population. Nowhere in the order does the Director discuss the public need for the fill.

In *Morse v. Oregon Division of State Lands,* 285 Or 197, 590 P2d 709 (1979), the Supreme Court, after

[429]

determining that a nonwater related fill of an estuary was authorized by statute, held that the Director failed to consider the public need for the fill in granting the permit. The court said:

> "* * *The extent of the [public] need must be evaluated by the Director before he can balance it against the detriment to navigation, fishing and recreational uses of the water in question. * * *" 285 Or at 209.

The only findings, in the order under review, relating to the need for the dike were that it was the means of access to Malarkey's residence and that excavation of a bridge opening to the dike would represent a substantial financial outlay by Malarkey. These findings do not relate to the public need for the dike. As the Supreme Court said in *Morse:* "In the absence of a finding that the public need predominates, there is no basis for the issuance of the permit." 285 Or at 209.

The order granting the permit is reversed.